UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JONATHAN L. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:15-CV-309-CHB |
| ) | |
| v. ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER ON OBJECTIONS TO** |
| DON BOTTOM, ) | **MAGISTRATE JUDGE'S** |
| ) | **RECOMMENDED DISPOSITION** |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Petitioner Jonathan L. Johnson's objections [R. 44, 51] to the Findings of Fact, Conclusions of Law and Recommendation of United States Magistrate Judge H. Brent Brennenstuhl [R. 28], addressing the Petition for Writ of Habeas Corpus [R. 1] and Amended Petition for Writ of Habeas Corpus [R. 15] filed by the Petitioner. Petitioner has also filed a Motion for Stay of Proceedings. [R. 53] For the following reasons, the Court will overrule Petitioner's objections and adopt the Magistrate Judge's Report and Recommendation. The Court will also deny Petitioner's accompanying Motion for Stay of Proceedings.

**I.  Background Facts**

The relevant facts in this case are not in dispute. The Kentucky Supreme Court summarized them as follows:

> On September 18, 2008, Appellant forced his way into Gerald Kleinhenz'[s] home. He encountered Kleinhenz's friend, Bridget Elder, just inside the door. Elder recognized Appellant from times when she had observed him smoking cocaine. Appellant attempted to shoot her point-blank in the head, but his shotgun misfired. After this shooting failure, he stabbed her multiple times in the chest. Appellant then turned to Kleinhenz, knocked him to the floor, and attempted to shoot him as well, but once again, the gun misfired. Undeterred by his malfunctioning shotgun,

> Appellant demanded money from Kleinhenz, who tossed him $40 in cash. Appellant grabbed the money and left.
>
> After Appellant fled, Elder called 911 to report the incident. On the call, Elder described how she had been stabbed multiple times in the chest. She further exclaimed that she was dying from the wounds and wanted to talk to her mother and children. A recording of this call was played for the jury at trial.
>
> Following the trial in Jefferson Circuit Court, the jury found Appellant guilty of first-degree robbery, first-degree assault, and second-degree assault, as a persistent felony offender. The three convictions were set to run concurrently for a total sentence of 28 years, but then reduced at final sentencing to 24 years.

*Johnson v. Commonwealth*, No. 2009-SC-000727-MR, 2011 WL 1103346, at *1 (Ky. 2011); *see also* [R. 18-11 pp. 1–2]  After the Kentucky Supreme Court affirmed Johnson's conviction, he filed a RCr 11.42 motion in the Jefferson County Circuit Court, which was denied by the trial court and the Kentucky Court of Appeals. *See Johnson v. Commonwealth*, NO. 2012-CA-001562-MR, 2014 WL 5802292, (Ky. Ct. App. 2014); [R. 18-3; R. 18-7]  Johnson filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 to this Court [R. 1], and an Amended Petition. [R. 15]  Johnson's Amended Petition asserted four grounds for relief. Magistrate Judge Brennenstuhl found none of the grounds meritorious and recommended that Johnson's Amended Petition be denied and that no certificate of appealability should issue. Petitioner now objects to Judge Brennenstuhl's recommendation.

## II. Standard of Review

### A. Objections

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's report and recommendation or else waive his rights to appeal.  When no objections are made, this Court is not required to "review . . . a magistrate's factual or legal conclusions, under a *de novo* or any other standard . . . ." *Thomas v. Arn*, 474 U.S. 140, 151 (1985).  Parties who fail to object to a magistrate judge's report and recommendation are also barred from appealing a district court's

order adopting that report and recommendation. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

For properly-made objections, non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a). Dispositive matters, however, are reviewed *de novo* if a party makes proper objections. Fed. R. Civ. P. 72(b)(3). In order to receive *de novo* review by this Court, any objection to the recommended disposition must be specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d. 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the magistrate's efforts and wastes judicial economy. *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991). Petitioner made timely objections to the recommendation, and the Court will therefore review the matter *de novo*. *See* [R. 41; 46]

### B. Applicable Law

Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Habeas is designed to "guard against extreme malfunctions in the state criminal justice systems, not [as] a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011); *see also Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (habeas was not intended as a "substitute for appeal, nor as a device for reviewing the merits of guilt determinations at criminal trials"). Accordingly, federal courts conducting habeas review are limited in several ways. First, before petitioning for habeas relief in federal court, state

prisoners typically must exhaust all available state court remedies by fairly presenting all claims to the state courts. 28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Second, to be timely, a habeas petition must satisfy a one-year statute of limitations. 28 U.S.C. § 2244(d)(1). And third, a federal court generally may not reach the merits of any claims that were procedurally defaulted in state court, either by a state court's express application of a procedural rule or a petitioner's failure to fairly present the claim. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013); *see also Reed v. Farley*, 512 U.S. 339, 354–55 (1994).

Under AEDPA, a writ of habeas corpus is a remedy for state prisoners whose custody violates *federal* law. 28 U.S.C. § 2254(a); *Reed v. Farley*, 512 U.S. 339, 347 (1994); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Federal courts may only grant a writ of habeas corpus if a petitioner shows that the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *see also Williams v. Taylor*, 529 U.S. 362 (2000). Even if found, not all constitutional errors warrant relief. *Williams*, 529 U.S. at 375. But where relief is warranted, the habeas court has "broad discretion in fashioning" it. *Gentry v. Deuth*, 456 F.3d 687, 696 (6th Cir. 2006); *see also Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Both conditional grants, which "provide states with an opportunity to cure their constitutional errors," and absolute grants are possible. *Gentry*, 456 F.3d at 692.

### III. Discussion

#### A. Grounds One and Two

In Petitioner's first two grounds he asserts that he was denied the effective assistance of counsel both at trial and on appeal. To establish ineffective assistance of counsel, a defendant must show deficient performance by his counsel and resulting prejudice. *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The performance inquiry requires the defendant to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The Court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. The prejudice inquiry requires the defendant "to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the context of a criminal trial, the prejudice inquiry requires the defendant to show there is a reasonable probability that, absent trial counsel's errors, the jury would have had a reasonable doubt respecting guilt. *Id.* at 695.

The Court need not conduct the two-prong inquiry in the order identified above or even address both parts of the test if the defendant makes an insufficient showing on one. *Id.* at 697. For example, if the Court determines the defendant fails to satisfy the prejudice prong then it need not determine whether counsel's performance was deficient. *Id.* Johnson claims that his trial counsel was constitutionally defective because he did not object to jury instructions that allowed the jury to find him guilty of both first-degree robbery and second-degree assault. [R. 15 p. 6] He argues that this subjected him to double jeopardy. He also claims that his appellate counsel was deficient for failing to raise this issue on appeal. [R. 15 p. 9] Essentially, Petitioner's first two grounds hinge on his claim that his second-degree assault was a lesser

included offense of his first-degree robbery conviction. If there was no double jeopardy violation to begin with, Johnson's trial and appellate counsel would not have been deficient by failing to raise the issue.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The seminal case *Blockburger v. United States*, 284 U.S. 299 (1932) established the test for determining whether two offenses are distinguishable to permit cumulative punishment. The test looks to the statutory elements of the two offenses to determine if they are different rather than the proof offered to prove those offenses. *Brown*, 432 U.S. at 166; *see also Pandelli v. United States*, 635 F.2d 533, 538 (6th Cir. 1980) ("The Blockburger test . . . focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial, or the facts alleged in a particular indictment.") (internal quotations omitted). "If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975).

The relevant section of the first-degree robbery statute under which Johnson was charged and convicted provides that:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
>
> (a) Causes physical injury to any person who is not a participant in the crime. . .

Ky. Rev. Stat. § 515.020(1)(a). By contrast the relevant section of the second-degree assault statute under which Johnson was charged and convicted reads as follows:

> (1) A person is guilty of assault in the second degree when:
>
> (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument[.]

Ky. Rev. Stat. § 508.020(1)(b). Magistrate Judge Brennenstuhl found that each statute included elements that the other did not:

> Clearly, the robbery statute contains an element of theft not present in the assault statute, and the only question is whether second-degree assault is a lesser included offense of first-degree robbery. To that end, the assault statute requires that the cause of a physical injury be a deadly weapon or a dangerous instrument. The robbery statute contains no such element. Additionally, the relevant portion of the robbery statute requires the injury to be suffered by an individual not involved in the crime, and the assault statute lacks this element. Even the elements that the perpetrator cause a physical injury are different where the assault statute requires the injury to be inflicted intentionally, and the robbery statute does not.

[R. 28 p. 6] In his objection, Petitioner argues that Magistrate Judge Brennenstuhl's analysis is flawed, because "the same course of conduct that constituted the robbery offense was used to charge him with second-degree assault." [R. 51 p. 2] However, the "same-conduct" test was explicitly rejected by the Supreme Court in *United States v. Dixon*, 509 U.S. 688, 704 (1993). *See, e.g.*, *Groves v. Meko*, 516 F. App'x 507, 510 (6th Cir. 2013) ("[T]he 1993 United States Supreme Court decision squarely rejecting the "same-conduct" test for double jeopardy and limiting the federal double jeopardy analysis solely to the question of whether each crime contained an element not contained in the other."). The relevant question is simply whether the statutes contain an element that is not contained in the other. As Magistrate Judge Brennenstuhl's thoughtful analysis shows, they clearly do. Put quite simply: a defendant could be convicted of first-degree robbery but not second-degree assault if he or she (1) did not intend to cause physical injury or (2) did not use a deadly weapon or dangerous instrument. *See Johnson v. Commonwealth*, NO. 2012-CA-001562-MR, 2014 WL 5802292, at *3 (Ky. Ct. App. 2014). And obviously a defendant could be convicted of assault but not robbery if he did not commit a theft. Therefore, each statute includes an element that the other does not, meaning Petitioner was not put in jeopardy twice for the same offense.

Petitioner also states that "it should be noted that the state court [the Kentucky Court of Appeals] found that "[t]he fact that the robbery instruction identified a gun and/or knife as the weapon used to inflict the injury is immaterial." [R. 51 p. 2]  It is not clear why this is relevant.  The Kentucky Court of Appeals was simply stating that the fact that the robbery jury instructions identified that Johnson used a particular weapon to injure his victim did not make it a statutory element of the offense, which is true.  As the offenses in this case contained distinct elements from each other there was no double jeopardy violation and thus Defendant's ineffective assistance of counsel claims in grounds one and two must fail.

### B. Ground Three

In his third ground Petitioner argues that the trial court erred by failing to grant a mistrial when a witness testified that she had seen him smoking crack cocaine. [R. 15 pp. 10–11]  The Kentucky Supreme Court found that while such evidence is inadmissible under KRE 404(b), the trial court appropriately admonished the jury rather than granting a mistrial. *Johnson v. Commonwealth*, No. 2009-SC-000727-MR, 2011 WL 1103346, at *1–2 (Ky. 2011).  As Judge Brennenstuhl noted, it is not clear what *federal* law Petitioner claims the Kentucky Supreme Court's decision violated. [R. 28 p. 7]  Petitioner does not clarify this in his objection, but rather re-states his same argument (that dismissal was the appropriate remedy rather than an admonition). [R. 51 p. 3]  The Kentucky Supreme Court made clear that this did not violate Kentucky law, and this Court cannot review that decision. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus"); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Even assuming that Petitioner is attempting to raise a due process claim under the

Fourteenth and Sixth Amendments, that claim would be meritless. "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236 (1941). When evaluating a state court's decision to not grant a mistrial on habeas review "reversal is not warranted unless the comment 'was potentially so misleading and prejudicial that it deprived the defendant of a constitutionally fair trial.'" *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 641–42 (1974)). The Sixth Circuit listed five factors federal district courts should consider when determining whether to grant a mistrial after a witness makes an improper reference:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*Zuern*, 336 F.3d at 485 (citing *United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994)).[1] At Johnson's trial the Commonwealth asked Bridget Elder (Johnson's victim) how she knew Johnson, despite a court instruction to not inquire into that issue. *Johnson v. Commonwealth*, No. 2009-SC-000727-MR, 2011 WL 1103346, at *1 (Ky. 2011). Elder stated that she had met Johnson "when . . . he was there with his girlfriend smoking crack." *Id.* Defense counsel cut off Elder by objection within one second of the remark. *Id.* The court gave an immediate admonition to disregard the witness's comments. The Kentucky Supreme Court found that the testimony could easily be separated from the actual crime at issue, and that the evidence regarding the crime at issue "was much more impactful itself." *Id.*

While the Commonwealth asked a question in violation of the trial court's instructions,

---

[1] The Sixth Circuit provided these factors in the context of a federal district court deciding whether to grant a mistrial in its own trial, not when evaluating a state court's decision on habeas review. *See United States v. Forrest*, 17 F.3d 916, 920 (6th Cir. 1994).

this Court cannot say that the trial court's decision to admonish the jury rather than grant a mistrial made Johnson's trial fundamentally unfair. First, the trial court gave an immediate and clear admonition to the jury. Second, and more importantly, the same witness gave much more evocative testimony regarding the crime at issue; specifically, that Johnson stabbed her. *Id.* This account was corroborated by a 911 call the witness placed from the scene of the crime. Despite the fact that factors one and two may have weighed in favor of granting a mistrial, this Court cannot say that it was contrary to clearly established federal law to decide otherwise. See *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003) (noting that review of the *Forrest* factors is necessarily more limited on habeas review than on direct appeal).

The Sixth Circuit's decision in *Zuern v. Tate* further counsels that a mistrial was not required. In *Zuern*, the Sixth Circuit found that reversal was not warranted when, in a murder trial, a witness referenced the defendant's previous murder conviction. *Id.* at 486. In this case the witness referenced Johnson's illegal drug use while he was on trial for robbery and assault. Not only is murder a more heinous crime than drug use (making the risk that the comment would inflame the jury greater), but the propensity evidence in *Zuern* was of far greater weight since it was the same crime as the one the defendant was currently on trial for (compare "a murderer is likely to commit murder" with "a drug user is likely to commit robbery and/or assault"). The Court cannot say that the state trial court's decision to admonish the jury rather than grant a mistrial constituted a denial of fundamental fairness. Therefore, the Court also cannot say that the Kentucky Supreme Court's decision to reverse the trial court's decision was contrary to or an unreasonable application of clearly established federal law. *See generally Williams v. Taylor*, 529 U.S. 362 (2000).

      **C.**     **Ground Four**

In his fourth ground, Petitioner argues that the trial court erred by allowing a 911 call

made by Bridget Elder (the woman he stabbed) immediately following the assault to be played during trial. [R. 15 pp. 13–14]  The Kentucky Supreme Court found that the tape was admissible under Kentucky evidence law. *Johnson v. Commonwealth*, No. 2009-SC-000727-MR, 2011 WL 1103346, at *2–3 (Ky. 2011).  Magistrate Judge Brennenstuhl recommended dismissing this ground because Petitioner had not identified any violations of federal law and federal habeas courts may not re-examine state court determinations of state law. [R. 28 pp. 8–9]  Johnson asserts in his objections that "his claim is one of a denial of his Fourteenth Amendment Right to Due Process and should be reviewed as such." [R. 51 p. 4]  As an initial matter, Johnson's Amended Petition and Reply make clear that his disagreement is merely over the Kentucky Supreme Court's application of Kentucky Rule of Evidence (KRE) 403 rather than a constitutional claim. *See* [R. 20 p. 7 (arguing that the call "was so prejudicial that it substantially outweighed any probative value . . .")]  In his Reply, Petitioner argues that "the question is not whether the 911 call was admissible under the Kentucky Rules of Evidence. Rather, the question is whether that portion of the 911 call . . . was so prejudicial that it substantially outweighed any probative value offered." [R. 20 p. 7]  But the issues of probative value and unfair prejudice relate to KRE 403, not the Due Process Clauses of the Fourteenth or Fifth Amendments.

However, even if Petitioner had presented a due process claim, the Court could not address it because it would not be properly before the Court.  Federal courts do not have jurisdiction to consider claims in which the "substance" was not "fairly presented" to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  A petitioner must present the factual and legal basis for his claim in order to "fairly present" it to the state court. *McMeans*, 228 F.3d at 681; *see also Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987) ("For a claim to be exhausted, the state court system must have been apprised of the facts and legal theory upon which petitioner bases his assertion.").  The Sixth Circuit looks at the following factors to

determine if a claim has been fairly presented:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681. However, "[g]eneral allegations of the denial rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.*

Petitioner's appeal to the Kentucky Supreme Court exclusively focused on Kentucky evidentiary issues (with regard to the 911 call). *See* [R. 18-14 pp. 21–28] Then, in the conclusion section of his appellate brief, Petitioner wrote that the admission of the 911 call "violated [Petitioner's] constitutional rights to due process and a fair trial, as guaranteed by the Sixth and Fourteenth Amendments." [*Id.* p. 28] He provided no other details regarding any constitutional claim. Petitioner's brief cited no cases (as required by factors one and two) and did not allege particular facts to support his vague constitutional claim as required by factor four. Quite simply, Petitioner's single sentence did not "fairly present" a constitutional due process claim. Petitioner's throw-away reference to violations of "due process" and a "fair trial" are precisely the type of general allegations that the Sixth Circuit has said do not constitute a fair presentation for purposes of habeas review. *McMeans*, 228 F.3d at 681. This is only further evidenced by the fact that the Kentucky Supreme Court did not address any constitutional questions in its decision. Any potential due process claim is therefore procedurally barred from review. *See, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

### D. Motion for Stay of Proceedings

Finally, Petitioner asks this Court for a stay of proceedings so that he may "return to the state courts to cure the defects in his original pleadings." [R. 53 p. 1] Petitioner does not identify

what "defects" he would cure if the Court granted a stay, nor what remedy he would be entitled to if he were able to cure the purported "defects." Presumably Petitioner is referring to his unexhausted due process claim related to the 911 call that he raised in his objections. The Supreme Court held that federal courts have the authority to stay proceedings in "limited circumstances" when a habeas petition includes both exhausted and unexhausted claims so that the petitioner may return to state court to raise the unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). However, a federal court may not grant a stay if a petitioner's claims are plainly meritless. *Id.*

Petitioner's unexhausted due process claim can only be described as plainly meritless. At trial, the prosecution played a 911 call made by Bridget Elder, the woman Petitioner stabbed. On the call Elder "described how she had been stabbed multiple times in the chest. She further exclaimed that she was dying from the wounds and wanted to talk to her mother and children." *Johnson v. Commonwealth*, No. 2009-SC-000727-MR, 2011 WL 1103346, at *1 (Ky. 2011). The Kentucky Supreme Court found that the call did not violate Kentucky Rule of Evidence 403 (similar to Fed. R. Evid. 403), and this Court cannot review that decision. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("federal habeas corpus relief does not lie for errors of state law").

Petitioner claims that playing the portion of the call where Elder stated that she thought she was dying, would never see her children again, and wanted to see her mother violated his due process rights. *See* [R. 15 p. 14; R. 20 p. 7 (raising objections to the 911 calls)]; *see also* [R. 51 p. 4 (claiming that the prior objections raised due process claims)] The presentation of evidence relevant to proving an element of a charged crime does violate a defendant's due process rights under the Sixth and Fourteenth Amendments. *Estelle v. McGuire*, 502 U.S. 62, 69–70 (1991). As the Kentucky Supreme Court held, this portion of the call was relevant to establish Elder's

- 13 -

"serious physical injury," an element required by KRS 508.010(1)(a) (Kentucky's first-degree assault statute). *Johnson*, 2011 WL 1103346, at *2. KRE 401 defines relevance as evidence that has "any tendency" to make a fact of consequence more or less probable—an extremely low bar. The fact that Elder's hospital records may have been *better* evidence to establish the severity of her injuries is irrelevant to whether her 911 call is itself relevant, which it clearly is. Therefore, the admission of the 911 call was clearly not a violation of Petitioner's due process rights. *Estelle*, 502 U.S. at 70. Since Petitioner's due process claim is plainly meritless, the Court may not stay the proceeding and allow Petitioner to return to state court. *Rhines*, 544 U.S. at 277.

**E.     Certificate of Appealability**

Finally, Petitioner objects to Judge Brennenstuhl's recommendation that no certificate of appealability (COA) be issued for any of his four grounds. The Court may only issue a COA if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "When a district court has rejected a petitioner's claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529, U.S. 473, 484 (2000). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* In this case, Johnson has not made the requisite showing that reasonable jurists would debate the denial of any of the four grounds in Johnson's § 2254 petition or conclude that any of the issues presented deserve to proceed further.

*See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, a certificate of appealability will not be issued.

Accordingly, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Stay of Proceedings **[R. 53]** is **DENIED**;

2. The Magistrate Judge's **Findings of Fact, Conclusions of Law and Recommendation [R. 28]** is **ADOPTED** as the Opinion of this Court;

3. Jonathan L. Johnson's **Petition for Writ of Habeas Corpus [R. 1]** and **Amended Petition for Writ of Habeas Corpus [R. 15]** are **DENIED** and **DISMISSED WITH PREJUDICE**;

4. No certificate of appealability will issue;

5. A separate Judgment shall issue contemporaneously with this Order.

This the 19th day of May, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc: COR
  Pro se Plaintiff